**Larry William PADGETT, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–86–00341–CR.**

Court of Appeals of Texas, Dallas.

Jan. 6, 1987.

Rehearing Denied Feb. 3, 1987.

John E. Weddle, Dallas, for appellant.

Gary A. Moore, Asst. Dist. Atty., Dallas, for appellee.

Before DEVANY, McCLUNG and STEPHEN F. PRESLAR [1], JJ.

DEVANY, Justice.

Larry William Padgett appeals his conviction for driving while intoxicated. Appellant waived trial by jury and entered a plea of nolo contendere. The court found appellant guilty and assessed his punishment at 60 days confinement in the Dallas County Jail and a $100 fine. In his sole point of error, appellant claims that the trial court erred when it denied his motion to suppress the evidence, in that the roadblock at which appellant was stopped and

---

1. The Honorable Stephen F. Preslar, Chief Justice, retired, Court of Appeals, Eighth District of    Texas at El Paso, sitting by assignment.

later arrested was not a valid driver's license check under article 6687b, § 13, but instead a subterfuge for conducting unlawful searches and seizures in violation of the Fourth Amendment. We agree; accordingly, we reverse and remand for a new trial.

The evidence at the suppression hearing consisted solely of the testimony of the arresting officers. Corporal Ellzey, a police officer, testified that on May 17, 1985, at 2 a.m. in the morning, he and other police officers, were stopping all automobiles westbound in the 1800 block of Story Road in Irving. After identifying the appellant, he stated that at the time of the stop the appellant arrived at the roadblock and rolled down his window. The police officer said he could immediately smell a strong odor of alcohol on appellant's breath. He had the appellant step out of the car. Another officer conducted a field sobriety test. The officers concluded that appellant was driving while intoxicated and arrested him.

Both Corporal Ellzey and Corporal Marchetti testified that they were members of the Driving While Intoxicated Squad but that their assignment on May 17, 1985, was to conduct a driver's license check. However, further examination of Corporal Ellzey at the suppression hearing developed the following testimony:

A: They are set up to number one: check person for a valid driver's license, whether it be Texas or another state. Number two: for state registration violation, motor vehicle inspection violation, and for any other violation that occurs in our presence.

Q: So initially when you make a stop your purpose is to see whether or not they have a driver's license?

A: That's our first question, and the second one will be as for insurance papers.

Q: With respect to that particular person operating the vehicle?

A: Yes, sir. If their driver's license and insurance papers are in order a visual check is made of their inspection sticker, and we walk back to the rear of the vehicle and check the registration also.

Article 6687b, § 13, of the Texas Revised Civil Statutes authorizes any peace officer to "stop and detain any motor vehicle operator for the purpose of determining whether such person has a driver's license." TEX.REV.CIV.STAT.ANN. art. 6687b, § 13 (Vernon Supp.1986). The courts of this state have consistently held that a driver's license check must be the *sole* purpose for such a stop, to-wit: to determine whether the driver had a valid driver's license. *Meeks v. State*, 692 S.W.2d 504, 508 (Tex.Crim.App.1985), and cases cited therein. "If a license check is not the sole reason for a detention, that detention is not authorized by the statute and cannot be upheld." *Meeks*, 692 S.W.2d at 508, citing *Fatemi v. State*, 558 S.W.2d 463 (Tex.Crim.App.1977). The officers here expressly testified that there were several purposes for the stop, which included checking for valid driver's licenses, motor vehicle registrations, vehicle inspection stickers, and insurance papers. In fact, at another point in the testimony of Corporal Ellzey he stated that the stop included the purpose of ascertaining "any other violation that occurs in our presence." These multiple purposes for the stop make it illegal since it was in violation of state law. Because the driver's license check was not the *sole* purpose for the stop, we cannot uphold it. *Meeks*, 692 S.W.2d at 508. *See also Faulkner v. State*, 549 S.W.2d 1 (Tex. Crim.App.1976).

The State argues that the stop was authorized under article 6687b § 13. The State does not contend that there was any probable cause for the stop, but simply was authorized under a statute which the courts of this state have repeatedly stated must be the *sole* reason for the stop. The testimony of the police officers admitted that there were other purposes for the stop.

Although the State does not argue that the stop was based upon any probable cause or that they had information that the appellant had committed a crime, we see a

need to discuss generally such stops by police officers. In order to make a valid investigative stop for less than probable cause, a police officer must have "specific and articulable facts which, in the light of his experience and personal knowledge taken together with rational inferences from those facts, would reasonably warrant the intrusion of the freedom of a citizen." *McMillan v. State*, 609 S.W.2d 784, 786 (Tex.Crim.App.1981).

Corporal Ellzey did elaborate about the reason for the choice of the particular location of the roadblock:

> It's usually—in the past it's usually pretty good. There's a lot of illegal aliens that live in Irving that use that route to commute to Dallas that are unlicensed drivers. We usually write quite a few citations there. There's a lot of transients in that particular area. Usually without license or insurance, and we usually end up writing a pretty large number of citations at this particular location.

■ While the characteristics of an area, and previous experience with a certain type of violation, such as driving without a license, are factors which may be considered in determining whether probable cause or reasonable suspicion exists, these factors alone are not sufficient to justify the stop in this case. *See United States v. Barnard*, 553 F.2d 389, 391 (5th Cir.1977), citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 881; 95 S.Ct. 2574, 2480, 45 L.Ed.2d 607, 617 (1975). Corporal Ellzey's testimony does not indicate either probable cause or the specific, articulable facts necessary to justify an investigative stop. *See Barnard*, 553 F.2d at 391. But even if the evidence at the suppression hearing did establish probable cause or reasonable suspicion to check for *insurance*, it would not establish probable cause or reasonable suspicion to support a stop to check motor vehicle registration, inspection stickers, or to check for persons driving while intoxicated. Therefore, the roadblock as a whole was in violation of the Fourth Amendment, and the arrest cannot be upheld as valid.

*Webb v. State*, 695 S.W.2d 676, 681–82 (Tex.App.—Dallas 1985, pet. granted). As the Supreme Court has stated,

> [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or either the vehicle or an occupant is otherwise subject to seizure for violation of the law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Delaware v. Prouse*, 440 U.S. 648, 664, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979), as quoted in *Meeks v. State*, 692 S.W.2d at 508.

Finally, we could uphold the stop if, independent of the evidence discovered at the roadblock, the officers had probable cause or reasonable suspicion to suspect that appellant himself was driving while intoxicated. The officers might have had probable cause to stop appellant if they had seen him driving erratically. *See Kelley v. State*, 677 S.W.2d 34, 37 (Tex.Crim.App. 1984). The record of the suppression hearing shows, however, that the officers did not have any such evidence. In fact, Corporal Ellzey gave the following testimony in response to this question by the defense counsel:

Q Was there anything prior to the time that you stepped up and asked for the driver's license that gave you some indication that he was under the influence of alcohol?

A Driving factors there were none. There was traffic backed up approximately—I don't know. Thirty forty yards back from the initial point that the check was being conducted so I didn't have an opportunity to observe his driving in any shape, form, or fashion other than him slowly creeping through the line to the initial checkpoint.

■ Thus, it is clear from the record that the officers had neither probable cause nor reasonable suspicion to justify the stop of appellant. Accordingly, the stop was il-

legal and the evidence must be suppressed under the "fruit of the poisonous tree" doctrine established in *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963).

While the record in this case would indicate that we should order an acquittal, the proper remedy is to reverse the conviction and remand the cause for a new trial since we have held that the admission of the unlawfully seized evidence was trial error. *Adams v. State*, 639 S.W.2d 942, 943 (Tex. Crim.App.1982).

Accordingly, we reverse the judgment of the trial court and remand for a new trial.